IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

SHAWN MAYWALD, AN INDIVIDUAL, AND TANYA L. MAYWALD, AN
INDIVIDUAL,
*Plaintiffs/Appellants*,

*v.*

TOYOTA MOTOR CORPORATION, A JAPANESE CORPORATION; TOYOTA
MOTOR NORTH AMERICA, INC., A CALIFORNIA CORPORATION; OVERTYME,
INC., AN ARIZONA CORPORATION,
*Defendants/Appellees*.

No. CV-25-0009-PR
Filed July 7, 2026

Appeal from the Superior Court in Navajo County
The Honorable Melinda K. Hardy, Judge
No. S0900CV202100003
**AFFIRMED**

Memorandum of the Court of Appeals, Division One
No. 1 CA-CV 23-0723
**VACATED**

COUNSEL:

G. Lynn Shumway, Shumway Law, PLLC, Phoenix; Brent Ghelfi (argued), Ghelfi Law Group, PLLC, Phoenix, Attorneys for Shawn Maywald and Tanya L. Maywald.

James W. Halbrooks, Jr., William F. Auther, Amanda E. Heitz, Wendy F. Lumish (argued), Alexander J. Egbert, Bowman and Brooke LLP, Phoenix, Attorneys for Toyota Motor Corporation, Toyota Motor North America, Inc., Overtyme, Inc.

Patrick X. Fowler, Ashley Wiberg, Snell & Wilmer LLP, Phoenix, Attorneys for Amicus Curiae The Product Liability Advisory Council, Inc.

———————

JUSTICE BEENE authored the Opinion of the Court, in which CHIEF JUSTICE TIMMER, VICE CHIEF JUSTICE LOPEZ and JUSTICES BOLICK, MONTGOMERY, KING, and CRUZ joined.

———————

JUSTICE BEENE, Opinion of the Court:

¶1 A manufacturer is liable for harm caused by a product sold "in a defective condition unreasonably dangerous." *O. S. Stapley Co. v. Miller*, 103 Ariz. 556, 559 (1968) (quoting Restatement (Second) of Torts § 402A (Am. L. Inst. 1965)). In this case, we consider whether a prima facie claim for strict product liability requires a showing that a product was both defective and unreasonably dangerous as independent elements. We also address the proper application of the consumer expectation test and risk/benefit analysis used for assessing the dangerousness of a defective product.

¶2 We conclude that a plaintiff asserting a strict product liability claim must first establish that the product was sold in a defective condition and, if so, that the defect rendered the product unreasonably dangerous.

¶3 The consumer expectation test and risk/benefit analysis inform the unreasonably dangerous inquiry. The consumer expectation test applies when an ordinary consumer, based on experience, has formed expectations about how safely the product at issue will perform. When that test does not apply, courts should instead employ the risk/benefit analysis, which weighs the risks and benefits of the product as designed rather than comparing those risks and benefits to those of an alternative design.

## BACKGROUND

¶4 In December 2019, Shawn and Tanya Maywald were traveling southbound on State Route 77 when the driver of a 2019 Toyota 4Runner, traveling northbound, fell asleep, drifted across the center line, and collided with the Maywalds' vehicle. Shawn Maywald sustained major injuries from the accident.

2

¶5            Consequently, the Maywalds sued Toyota Motor Corporation, Toyota Motor North America, Inc., and Overtyme, Inc. (collectively, "Toyota"), alleging strict liability for design defect, negligent design, and loss of consortium claims.  The Maywalds alleged that the 2019 4Runner was defective and unreasonably dangerous because the vehicle lacked a lane departure warning ("LDW") system.  LDW is a technology that emits an audio, visual, or tactile alert when it detects a driver drifting from the intended lane of travel.  Toyota did not offer LDW as a standard or optional feature for the 2019 4Runner.

¶6            Toyota moved for summary judgment, arguing that the 4Runner was not defective or unreasonably dangerous and that the vehicle's design did not cause the accident.   The Maywalds filed cross-motions for partial summary judgment concerning comparative fault and the risk/benefit analysis as it applied to the 4Runner's design.  In response, Toyota asserted that the Maywalds' theory of liability was fundamentally flawed insofar as it depended on the notion that the risk/benefit analysis entails consideration of the risks and benefits of an alternative design rather than the risks and benefits of the product's actual design.   The superior court granted Toyota's motions, denied the Maywalds' motions, and entered final judgment in favor of Toyota.

¶7            The court of appeals vacated the superior court's grant of summary judgment.  *See Maywald v. Toyota Motor Corp.*, No. 1 CA-CV 23-0723, 2024 WL 5165445, at *6 ¶ 29 (Ariz. App. Dec. 19, 2024) (mem. decision).   The court noted that Arizona has adopted the consumer expectation test and the risk/benefit analysis to "determine whether a defective product was unreasonably dangerous."   *Id.* at *2 ¶ 8.  It then reasoned that the consumer expectation test was inapplicable because LDW is not sufficiently well known and widely adopted such that ordinary consumers expect that its inclusion is required for a vehicle to perform safely.  *Id.* ¶ 10.

¶8            Next, the court determined that the risk/benefit analysis applied and was not predicated on a threshold showing that the 4Runner was defective.  *See id.* at *3–4 ¶¶ 11–16.  The court further opined that the risk/benefit analysis is not restricted to the 4Runner as it was designed but instead should weigh the risks of excluding LDW against the benefits of including LDW.  *See id.* at *4 ¶¶ 17–21.  Under its risk/benefit analysis, the

court found that the Maywalds pleaded sufficient facts for their strict product liability claim to survive Toyota's motion for summary judgment. *Id.* ¶ 21. The court also concluded that there were genuine issues of material fact as to whether Toyota acted negligently when it designed the 4Runner without LDW and whether the absence of LDW proximately caused the accident. *See id.* at *5–6 ¶¶ 22–27. Finally, because the court reinstated the Maywalds' substantive claims, it also reinstated the Maywalds' derivative loss of consortium claim. *Id.* at *6 ¶ 29.

¶9 We granted Toyota's petition for review to resolve whether a strict product liability claim requires establishing that the product is both defective and unreasonably dangerous and to clarify the proper application of the consumer expectation test and the risk/benefit analysis. These are matters of statewide importance likely to recur. We have jurisdiction pursuant to article 6, section 5(3) of the Arizona Constitution.

## DISCUSSION

¶10 We review the superior court's ruling on a motion for summary judgment de novo, viewing the facts and reasonable inferences in the light most favorable to the non-moving party. *Rosenberg v. Sanders*, 256 Ariz. 359, 364 ¶ 24 (2023). Summary judgment is required "if the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a).

## I.

¶11 Nearly sixty years ago, in *O. S. Stapley Co.*, this Court adopted the doctrine of strict product liability as set forth in Restatement § 402A, which provides that "[o]ne who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability." 103 Ariz. at 559–60 (quoting Restatement § 402A). Building on that foundation, this Court later rejected a different approach in California law and reaffirmed in *Byrns v. Riddell, Inc.*, that a party asserting a strict product liability claim under Arizona law must prove both that the product was defective *and* that the defect rendered it unreasonably dangerous. 113 Ariz. 264, 266–67 (1976). This two-part test was reaffirmed in *Rogers v. Unimac Co.*, where this Court further specified that a plaintiff must not only prove that the product which caused the injury "was

4

defective when it left the factory, but also that such defect made the product unreasonably dangerous and was also the proximate cause of the plaintiff's injury." 115 Ariz. 304, 307 (1977).

¶12 Retaining the two-part test preserves the distinction between a defective product and one that merely causes injury. Without the independent requirement that the product posed an unreasonable danger, a factfinder could conclude that any injury-causing product is defective, effectively converting product-liability law into absolute liability. *See Dart v. Wiebe Mfg., Inc.*, 147 Ariz. 242, 244 n.1 (1985); *Byrns*, 113 Ariz. at 267 (observing that the "unreasonable danger" concept is particularly "effective as a means of limiting the strict tort liability doctrine 'in cases in which the issue is the nature of the duty of a manufacturer with respect to safe design, or in situations in which injury does not follow as a matter of course from the defect.'" (quoting Allan E. Korpela, Annotation, *Products Liability: Product as Unreasonably Dangerous or Unsafe Under Doctrine of Strict Liability in Tort*, 54 A.L.R. 3d 352 (1973))); *see also Vineyard v. Empire Mach. Co.*, 119 Ariz. 502, 504 (App. 1978) (noting that "strict liability is not synonymous with absolute liability" because the latter renders a manufacturer liable upon solely establishing that a product caused an injury).

¶13 Although *Dart* reaffirmed the two-part "defect" and "unreasonable danger" test, it also blurred the distinction between those concepts by stating that "the question of defective *and* unreasonably dangerous condition" could be resolved together under a risk/benefit analysis. 147 Ariz. at 245 (emphasis added). Nevertheless, in *Readenour v. Marion Power Shovel*, this Court reiterated that proof of a defect alone is insufficient to establish liability. 149 Ariz. 442, 447 (1986). The Court explained that "[s]trict liability in tort is found only where the defective condition causes the product to be 'unreasonably dangerous.'" *Id.* *Readenour* first defined a "defective condition" as "one which makes the product unsafe for 'normal handling and consumption.'" *Id.* (quoting Restatement § 402A cmt. h). Next, *Readenour* confirmed that courts use the consumer expectation test and the risk/benefit analysis recognized in *Dart* to determine whether a product is unreasonably dangerous. *Id.* Thus, *Readenour* reaffirmed the two-part test for strict product liability, concluding that strict product liability applies only when a product is both defective and unreasonably dangerous.

¶14		In the years that followed, however, appellate decisions muddied that framework. The court of appeals relied on several of those decisions in analyzing the issues presented here. One such decision was *Dillon v. Zeneca Corp.*, 202 Ariz. 167 (App. 2002), which the court of appeals cited in defining the elements of a prima facie strict product liability claim. *See Maywald*, 2024 WL 5165445, at *2 ¶ 7. *Dillon* concluded that a plaintiff must make a singular showing that the product was in a defective condition that rendered it unreasonably dangerous rather than first demonstrating defectiveness and then that unreasonable danger arises from the defect. 202 Ariz. at 172 ¶ 14. In support of its conclusion, it cited this Court's decision in *Gosewisch v. American Honda Motor Co.*, 153 Ariz. 400 (1987). *Id.* But *Gosewisch* did not frame the standard that way; it held that a prima facie case requires proof that "the product is in a defective condition *and* unreasonably dangerous." 153 Ariz. at 403 (emphasis added). By recasting *Gosewisch*'s formulation, *Dillon* collapsed two distinct elements of a strict product liability claim, and in doing so, misstated the governing standard.

¶15		A similar misunderstanding appears in another case the court of appeals relied on—*Golonka v. General Motors Corp.*, 204 Ariz. 575 (App. 2003). In *Golonka*, the court described two approaches for determining whether a product was in a "defective condition unreasonably dangerous": the "consumer expectation test" and the "risk/benefit analysis." *Id.* at 581 ¶ 13 (quoting *Dart*, 147 Ariz. at 244). Relying on *Dart*, the *Golonka* court then concluded that proving the product "failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonable manner" or that the risks of a product's design outweigh its benefits establishes that a product is both defective and unreasonably dangerous. *Id.* ¶ 14 (quoting *Dart*, 147 Ariz. at 245). By declaring that satisfying either the consumer expectation test or the risk/benefit analysis establishes both defective condition and unreasonable danger, the *Golonka* court effectively eliminated the distinction between the two elements. Thus, like *Dillon, Golonka* obviates the requirement that defectiveness and unreasonable danger must be separately established in a strict product liability claim.

¶16		The same analytical flaw appears in another Arizona case involving defective design—a case the court of appeals also invoked here. In *Gomulka v. Yavapai Machine & Auto Parts, Inc.*, the court of appeals addressed Arizona law governing defective design and stated that "[a]

defectively designed product is one that is made as the manufacturer intended it to be but that is unreasonably dangerous." 155 Ariz. 239, 241–42 (App. 1987). In reaching that conclusion, however, the *Gomulka* court overlooked this Court's jurisprudence that independently requires proof that the product was defective.

¶17 By relying on *Dillon*, *Golonka*, and *Gomulka*, the court of appeals here erred in vacating the superior court's order granting Toyota's motion for summary judgment. To the extent that these cases collapse defectiveness and unreasonable danger into a single concept, we disapprove them. Moreover, we disapprove any language in *Dart* that blurs the line between defective condition and unreasonable danger. The longstanding distinction between defectiveness and unreasonable danger is no mere syntactic accident. As stated above, the unreasonable danger element prevents strict liability from transforming into absolute liability. *See supra* ¶ 12. Similarly, the threshold requirement of defectiveness serves to curtail liability when a product that is fit for its purpose causes an injury simply because its normal use poses inherent risks. *See Estabrook v. J. C. Penney Co.*, 105 Ariz. 302, 307 (1970) (concluding jury instructions on strict liability were not warranted because there was no evidence that the escalator which injured the plaintiff was defective). Together, defectiveness and unreasonable danger substantiate strict product liability. The two concepts are neither optional nor are they one and the same.

## II.

¶18 Because our cases have not always clearly distinguished these concepts, we now delineate both the elements of a strict product liability claim and the relationship among them. Accordingly, we reaffirm that a plaintiff establishes a prima facie case of strict product liability by showing that (1) the product was defective, (2) the defect rendered the product unreasonably dangerous, and (3) the defect proximately caused the plaintiff's injuries. *See Jimenez v. Sears, Roebuck & Co.*, 183 Ariz. 399, 402 (1995). We further take this opportunity to clarify the governing principles by defining the terms "defective" or "defective condition" and "unreasonably dangerous," and by explaining the procedural framework governing the relationship between those concepts.

¶19 As this Court recognized in *Readenour*, a "defect" is distinct from an "unreasonable danger." 149 Ariz. at 446–47. *Readenour* explained

that a product is "defective" or in a "defective condition" when it is "unsafe for 'normal handling and consumption.'" *Id.* at 447 (quoting Restatement § 402A cmt. h); *see also Bailey v. Montgomery Ward & Co.*, 6 Ariz. App. 213, 218 (1967) (defining a "defective article" as a product "that is not reasonably fit for the ordinary purposes for which such articles are sold and used" (citation modified)).

¶20　　　By contrast, a product is "unreasonably dangerous" when it is "more dangerous than a consumer would expect or whose risks outweigh its benefits." *Readenour*, 149 Ariz. at 447. In *Readenour*, this Court reaffirmed that proof of defectiveness alone is insufficient to establish strict product liability. Such liability arises only when the defective condition also renders the product unreasonably dangerous. Preserving this distinction provides parties and courts with a more defined analytical framework for determining when a defective product gives rise to strict product liability.

¶21　　　With these definitions in mind, we reaffirm the framework governing whether a product is in a "defective condition unreasonably dangerous." Because defectiveness and unreasonable danger are analytically distinct, a plaintiff must establish both. A plaintiff must first prove that the product was defective. Absent such a showing, the inquiry ends and the product liability claim fails. If the plaintiff establishes a defect, however, the analysis does not end there. The plaintiff must also prove that the defect rendered the product unreasonably dangerous. Only when both elements are satisfied may strict product liability be imposed.

¶22　　　In *Readenour* this Court used the two tests identified in *Dart* but confined them to determining whether a product is "unreasonably dangerous": the consumer expectation test and the risk/benefit analysis. *See* 149 Ariz. at 447. Under the "consumer expectation test," the factfinder determines whether a product "failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonable manner." *Dart*, 147 Ariz. at 245 (quoting *Barker v. Lull Eng'g Co.*, 573 P.2d 443, 446 (Cal. 1978)). By contrast, the "risk/benefit analysis" requires the factfinder to

consider several relevant factors[1] and determine whether "the benefits of [a] challenged design . . . outweigh the risk of danger inherent in [the] design." *Id.* (quoting *Barker*, 573 P.2d at 446).

**¶23**         *Dart* also articulated the likely circumstance when each test applies. *See id.* at 244–45. The Court explained that, in manufacturing defect cases, the consumer expectation test functions effectively because consumers develop safety expectations through experience with properly manufactured products of the same general design. *See id.* at 244. The Court cautioned, however, that this test may have more limited utility in design defect cases because "the consumer would not know what to expect, because he would have no idea how safe the product could be made." *Id.* (quoting John W. Wade, *On the Nature of Strict Tort Liability for Products*, 44 Miss. L. J. 825, 829 (1973)). Consequently, when the consumer expectation test cannot feasibly be applied in a design defect case, courts should instead employ the risk/benefit analysis to determine whether the defect renders the product unreasonably dangerous. *See id.* at 244–46.

**¶24**         Applying these definitions and the framework for determining whether a product is defective and unreasonably dangerous, we conclude that the 4Runner was not defective.

---

[1]  This Court approved the following non-exhaustive list of factors to determine whether a defect is unreasonably dangerous under the risk/benefit analysis:
> (1) The usefulness and desirability of the product,
> (2) the availability of other and safer products to meet the same need,
> (3) the likelihood of injury and its probable seriousness,
> (4) the obviousness of the danger,
> (5) common knowledge and normal public expectation of the danger (particularly for established products),
> (6) the avoidability of injury by care in use of the product (including the effect of instructions or warnings), and
> (7) the ability to eliminate the danger without seriously impairing the usefulness of the product or making it unduly expensive.

*Dart*, 147 Ariz. at 245–46 (quoting *Byrns*, 113 Ariz. at 267).

### A. A lack of LDW did not place the 4Runner in a defective condition.

**¶25** As previously noted, a product is defective if it is "unsafe for 'normal handling and consumption.'" *Readenour*, 149 Ariz. at 447 (quoting Restatement § 402A cmt. h); *see also* Restatement § 402A cmt. g (defining "[d]efective condition" as "a condition not contemplated by the ultimate consumer, which will be unreasonably dangerous to him"). A defect, therefore, is a condition or characteristic of the product not reasonably contemplated by the ordinary consumer that renders the product unsafe for its intended use.

**¶26** Here, we conclude that consumers reasonably expect that vehicles are designed to allow them to drive within marked lanes, and we agree with Toyota that the Maywalds failed to establish that the 4Runner did not deliver on that expectation. There is an expectation that safety devices will guard against injury by accidents. But there is no expectation that a vehicle will prevent human error in careless driving. Although LDW technology may enhance vehicle safety, it does not eliminate the driver's fundamental responsibility to maintain control of the vehicle. Nor can it reasonably be disputed that an ordinary driver understands the obligation to stay awake and remain within the proper lane of travel, and appreciates the inherent danger of crossing into a lane occupied by oncoming traffic. *See* A.R.S. § 28-729(1) ("[A] person shall drive a vehicle as nearly as practicable entirely within a single lane and shall not move the vehicle from that lane until the driver has first ascertained that the movement can be made with safety.").

**¶27** The Maywalds alleged a single defect: the 4Runner lacked an LDW system.[2] But the absence of that feature did not render the vehicle unsafe for its intended and ordinary use. The normal operation of a vehicle requires an attentive driver to steer and maintain control, and a driver

---

[2] The Maywalds alleged that the 4Runner lacked any of the various available lane departure prevention technologies, including lane departure warning, lane keeping assist, and lane centering assist. Because the technologies all serve the same purpose—helping a driver maintain the proper lane of travel—we conclude that the lack of any of these systems is the same purported defect.

asleep at the wheel is not engaging in normal use. Because the absence of LDW technology did not render the 2019 4Runner unsafe for ordinary use, the vehicle was not defective. *See Rogers*, 115 Ariz. at 307 ("That the Unimac Company could have adopted a different type of safety device, [i.e.] a lid lock, is not in itself sufficient evidence to establish defective design."); *Brown v. Sears, Roebuck & Co.*, 136 Ariz. 556, 563 (App. 1983) ("The fact that an alternate safety feature may be available does not in and of itself render a product . . . defective and unreasonably dangerous.").

¶28 We find persuasive the analysis of the New Jersey Appellate Division, which held that the absence of an available driver-assistance system does not render an otherwise safe vehicle defectively designed. *See Berkoski v. Honda Motor Co.*, 328 A.3d 986 (N.J. Super. Ct. App. Div. 2025). In *Berkoski*, as here, the plaintiff asserted that a vehicle was defectively designed because it was not equipped with an available LDW system. *Id.* at 987. The court rejected that claim, concluding that the plaintiff failed to demonstrate that the absence of the LDW system rendered the vehicle unsafe. *Id.* at 993–94. In reaching that conclusion, the court explained that although an LDW system may aid a driver it does not displace the obvious expectation that the driver remains responsible for steering and controlling the vehicle. *Id.* at 993. We find *Berkoski*'s rationale equally applicable and dispositive here.

¶29 Rather than *Berkoski*, the Maywalds urge us to follow *Ortiz v. Daimler Truck North America LLC*, 112 Cal. App. 5th 608 (2025). *Ortiz* addressed a different issue than the one presented here. *Ortiz* considered whether a manufacturer's alleged failure to install collision-avoidance technology could be resolved on summary judgment based on duty and proximate-cause principles. *Id.* at 613–14. The court declined to address whether the truck was defectively designed. *Id.* at 636–37. Accordingly, *Ortiz* never confronted the threshold issue presented here—whether the absence of driver-assistance technology rendered the product defective in the first instance. *Ortiz* does not inform or affect our conclusion that a lack of LDW does not render the 4Runner defective.

11

###### B. Because the 4Runner was not sold in a defective condition, the Maywalds' negligent design and loss of consortium claims cannot proceed.

###### 1. The Maywalds have not made the threshold showing of defect required in a negligent design claim.

¶30 Because they cannot establish that a lack of LDW is a defect, the Maywalds' negligent design claim also fails. Negligent design defect claims and strict liability design defect claims are distinct theories of liability. The former theory "concerns itself with determining whether the conduct of the defendant was reasonable in view of the foreseeable risk of injury." *Dart*, 147 Ariz. at 246. And the latter theory "is concerned with whether the product itself was unreasonably dangerous." *Id.* Nevertheless, a negligent design defect claim, like a strict liability design defect claim, requires establishing that the product at issue was defective in the first instance. *See Mather v. Caterpillar Tractor Corp.*, 23 Ariz. App. 409, 411 (1975) ("Under the negligence theory a 'design defect' arises when the manufacturer has failed to use reasonable care to design its products so as to make it safe for intended uses."). Thus, failure to establish a defect proves fatal to both of the Maywalds' theories of liability.

###### 2. The Maywalds do not have a viable underlying tort claim to sustain their loss of consortium claim.

¶31 Lastly, without a viable underlying tort claim, the Maywalds' loss of consortium claim is also untenable. *See Barnes v. Outlaw*, 192 Ariz. 283, 286 ¶ 8 (1998) (noting that "loss of consortium is a derivative claim" and thus its existence depends upon successfully proving the elements of an underlying claim).

###### C. The risk/benefit analysis is only concerned with the risks and benefits of the challenged design.

¶32 Given that the Maywalds failed to make a threshold showing of defectiveness, we need not determine whether the 4Runner was unreasonably dangerous. *See supra* ¶ 21. Nonetheless, we deem it prudent to clear up confusion concerning the proper focus of the risk/benefit

analysis. In this case, the court of appeals applied the risk/benefit analysis and concluded that summary judgment was improper because genuine issues of material fact existed regarding whether the benefits of incorporating LDW technology into the 4Runner's design outweighed the risks associated with omitting it. *See Maywald*, 2024 WL 5165445, at *7 ¶ 21. The court, however, erred in applying that analysis.

¶**33** The risk/benefit analysis asks whether, when considering certain relevant factors, "the benefits of the *challenged design . . .* outweigh the risk of danger inherent in [the] design." *Dart*, 147 Ariz. at 245 (emphasis added) (quoting *Barker*, 573 P.2d at 446). Under our jurisprudence, that inquiry focuses on the risks and benefits inherent in the challenged design itself—here, the 4Runner without LDW technology. The court of appeals departed from that framework by comparing the challenged design to an alternative design incorporating LDW technology. To be sure, two factors in the risk/benefit analysis concern alternative designs—"the availability of other and safer products to meet the same need" and "the ability to eliminate the danger without seriously impairing the usefulness of the product or making it unduly expensive." *Dart*, 147 Ariz. at 245–46 (quoting *Bryns*, 113 Ariz. at 267). But strict liability does not arise from weighing the risks and benefits of an alternative design, as the court effectively concluded here. Were it otherwise, manufacturers would essentially be required to incorporate every feasible safety feature or face potential liability, a result that could render many products prohibitively expensive. Our inquiry therefore remains focused on whether the product, as designed and sold, was reasonably safe for its intended and ordinary use, not whether additional features could have made it safer.

¶**34** A proper application of the risk/benefit analysis does not ask whether Toyota could have designed a safer 4Runner by adding LDW technology. Rather, it asks whether the risks inherent in the challenged design—the 4Runner as sold without LDW technology—outweighed its benefits. Evidence concerning the feasibility or utility of an alternative design may inform that inquiry, but it cannot supplant it. Because the court of appeals framed the analysis around the comparative merits of a design incorporating LDW technology, rather than the risks and benefits of the challenged design itself, it misapplied the risk/benefit analysis.

## CONCLUSION

¶35　　　　We reaffirm that Arizona's strict product liability doctrine requires proof that a product is both defective and unreasonably dangerous.  Preserving those distinct inquiries ensures that strict liability remains confined to defective products and does not become a form of absolute liability.  For the foregoing reasons, we vacate the court of appeals' decision and affirm the trial court's summary judgment in favor of Toyota.